**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CHARLES E. MATHIS, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § CIVIL ACTION NO. H-04-3053 |
| | § |
| JOHN ASHCROFT, United States | § |
| Attorney General, | § |
| | § |
| Defendant. | § |

**MEMORANDUM AND OPINION**

Plaintiff Charles Mathis, a retired Special Agent with the Drug Enforcement Administration, sued John Ashcroft in his capacity as Attorney General of the United States for discriminating against him on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; and on the basis of his age, in violation of the Age Discrimination Enforcement Act (ADEA), 29 U.S.C. § 621 *et seq.* Mathis alleged retaliation and constructive discharge. The lawsuit arises out of the DEA's decision to transfer Mathis out of the Houston Division Office in 2002.

Ashcroft has filed a motion for summary judgment on all claims, (Docket Entry No. 18), to which Mathis has not responded. On the basis of the pleadings, the motion, the record, and the applicable law, this court grants summary judgment, for the reasons explained below. Final judgment in Ashcroft's favor will be entered by separate order.

**I.**     **Background**

The DEA hired Mathis, an African-American, as a Special Agent in 1973. Mathis worked in the Houston Division (Houston) Office from 1977 until 2001, when he retired. From May 2000 to April 2001, Mathis was assigned to Enforcement Group 5 in the Houston Division Office, in Houston. In April 2001, the DEA eliminated this group and transferred all of Group 5's positions to the Laredo, Texas office, which is part of the Houston Division.

When the DEA eliminated Group 5, Mathis was temporarily assigned as the Group Supervisor for the Joint Division Intelligence Group. In September 2001, Mathis's position was assigned to the Tactical Diversion Squad by Special Agent-in-Charge John Garland.

On July 23, 2002, the Merit Systems Protection Board ordered the DEA to restore another employee to the position of GS-14 Supervisory Criminal Investigator. In compliance with this request, on August 21, 2003, the Career Board restored that employee to the position of Supervisory Criminal Investigator in the Houston Division Office. As a result of this transfer, the Houston Division Office became overstaffed with GS-14 employees. Each division office has a limit to the number GS-14 employees it may have. The DEA's Career Board, which is comprised of eleven senior agency managers, including the DEA's Deputy Administrator, oversees and decides a number of personnel matters, including transfers, deployments, and certain promotions. When the Houston Division passed its limit of GS-14 employees, the Career Board compiled a list of all GS-14 investigators who had served at least three years at the GS-14 level but had not served a temporary assignment at Headquarters in Washington, D.C. The list consisted of Mathis, then age 52; Special Agent

2

Nimms, who is white and was 49 years old; and Special Agent William Owen, who is white and was 52 years old. Of the three, Mathis had served in the Houston office for the longest period, since 1977. Owen had been assigned to the Houston Division Office since 1985, and Nimms had been assigned to the Houston Division Office since 1998. In light of the lengthy period of time which Mathis had spent in the Houston Division Office without a transfer to Headquarters, and to minimize operational impact from reassignments, the Career Board recommended Mathis for the transfer.

On October 8, 2002, Mathis filed an administrative complaint of discrimination, alleging that he had been discriminated against when: (1) Ronald Pierro supervised him from May 2000 to April 2001; (2) the DEA eliminated Group 5 in 2001; (3) he was transferred to Group Supervisor in April 2001; (4) he was assigned to the Tactical Diversion Squad in September 2001; and (5) the Career Board transferred him to Headquarters in August 2002, which forced him to retire in December 2002. Mathis alleged two other incidents of retaliation. One was on September 4, 2002, when Supervisor Kevin Whaley told Mathis Whaley that he was "disappointed" that Mathis had filed a discrimination complaint. The other was on December 2, 2002, when DEA officials questioned Mathis about his use of sick leave. The EEO dismissed certain of Mathis's complaints as untimely.

## II.     The Governing Legal Standards

### A.     Rule 56

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir.2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir.2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

**B.     Title VII**

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)(1988). "A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden." *Nichols v. Loral*

*Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996). "However, because direct evidence of discrimination is rare, the Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly presentation of proof in discrimination cases." *Id.*; *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

In order to overcome a motion for summary judgment on Title VII discrimination claims, plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801- 803 (1973); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Bodenheimer,* 5 F.3d at 957 n.4. A *prima facie* showing of discrimination requires a plaintiff to show that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class or received disparate treatment. If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If a defendant can produce such evidence, the plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons." *Id*. at 253. Once a Title VII case reaches the pretext stage, the question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination. *Schackelford v. Deloitte & Touche, L.L.P.,* 190 F.3d 398, (5th Cir. 1999) (citing *Rhodes v. Guiberson Oil*

*Tools*, 75 F.3d 989, 993 (5th Cir. 1996)). If the claim reaches the pretext stage, the issue is whether the totality of the evidence, including the evidence raised at the *prima facie* case and pretext stages, raises a genuine issue of material fact as to whether defendant fired plaintiff because of race. The issue is whether the evidence, viewed in the light most favorable to the plaintiff is sufficient to create a jury question regarding discrimination.

In determining whether the nonmovant has created a genuine issue of material fact, the court looks to rebuttal evidence of pretext "in tandem with evidence presented as part of the *prima facie* case." *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999). The Supreme Court has held that a "plaintiff's *prima facie* case, combined with sufficient direct evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. The trier of fact may "infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id*. at 147; *see also Vade v. Miss. State Univ.*, 218 F.3d 365, 374 n. 23 (5th Cir. 2000) (discussing application of *Reeves*). "[S]uch a showing by the plaintiff will [not] always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder would conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. At all times, the plaintiff retains the ultimate burden of persuasion. *See Burdine*, 450 U.S. at 253.

**C.    ADEA**

To establish a *prima facie* case of age discrimination under the Age Discrimination in Employment Act ("ADEA"), the plaintiff must establish that (1) he was a member of the protected class (*i.e.* over 40); (2) he was qualified for the position; (3) he was discharged; and (4) younger employees were not treated similarly. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-04 (1973); Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 957 (5th Cir. 1993); Guthrie v. Tifco Indus., 941 F.2d 374, 376 (5th Cir. 1991). Once a *prima facie* case is established, the defendant must demonstrate a legitimate and nondiscriminatory basis for the adverse employment decision. *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995). The plaintiff must then show that the defendant's offered reason is pretextual and that age motivated the challenged employment decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Bodenheimer*, 5 F.3d at 958.

### D.   Retaliation

A retaliation claim requires a *prima facie* showing that: (1) the employee engaged in protected activity under Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Thomas v. Tex. Dep't Crim. Justice*, 220 F. 3d 389, 394 (5th Cir. 2000); *Mattern v. Eastman Kodak*, 104 F.3d 702, 705 (5th Cir. 1997). An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 n.4 (5th Cir. 1996). The burden-shifting framework of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), applies to Title VII retaliation cases. *Long*, 88 F.3d at 304–05. Once the plaintiff makes a *prima facie* showing, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the defendant produces evidence that, if true, would permit a trier of fact to conclude that the adverse employment action was nondiscriminatory, the focus shifts to whether the defendant unlawfully retaliated against the plaintiff. *Id*. at 305. "The ultimate question in an unlawful retaliation case is whether the defendant discriminated against that plaintiff because she engaged in conduct protected by Title VII." *Id.* at 304; *Thomas*, 220 F.3d at 394.

### E.     Constructive Discharge

A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign. *See Hunt v. Rapides Healthcare System*, 277 F.3d 757, 771–72 (5th Cir. 2001) (citing *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997); *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)). Courts consider a variety of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not. *Barrow*, 10 F.3d at 297. The test is objective. The question is not whether the plaintiff felt compelled to resign, but whether a reasonable employee in his situation

9

would have felt so compelled.  *Id.* at 297 n.19 (citing *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 740–41 (5th Cir. 1994)).

### III.    Analysis

#### A.    The Title VII Claim

The undisputed facts in the record show that the DEA transferred Mathis because he had served the longest in the Houston Division Office without a transfer to Headquarters and because moving Mathis would have the least impact on the Houston Division Office's operations.  As a matter of law, Mathis has not raised a fact issue as to whether the decisions he challenges were discriminatory.

#### B.    The ADEA Claim

The summary judgment evidence shows that as a matter of law, Mathis cannot show that anyone outside his protected group was treated more favorably than him.  The other candidates who were not transferred were also over 40.  Additionally, the DEA has shown legitimate, nondiscriminatory reasons for transferring Mathis.  Mathis has not presented any evidence to create an issue of fact material to whether the DEA's rationale for transferring Mathis was a pretext for age discrimination.

#### C.    The Retaliation Claim

Mathis contends that a DEA supervisor asked him on September 4, 2002 if he had filed an EEO complaint.  According to Mathis's complaint, he had not filed an EEO complaint until September 5, 2002.  Because Mathis had not engaged in any protected activity before September 4, 2002, his *prima facie* case fails.

Mathis's complaint that he was treated rudely when Supervisor Ellis questioned his use of sick time cannot form the basis of a retaliation claim. *See, e.g.*, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986). The summary judgment record does not show any causal relationship between this conversation and the DEA's decision to transfer Mathis.

### D. The Constructive Discharge Claim

Mathis has introduced no evidence that could support a constructive discharge claim. Nothing about the challenged transfer decision, which was routine and part of all DEA employees' "mobility" requirement, could support such a claim on this record.

## IV.     Conclusion

Ashcroft's motion for summary judgment on all claims is granted.  Final judgment in Ashcroft's favor will be entered by separate order.

SIGNED on March 30, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge